Next case is Encap versus the Scotts Company, 2015-2008. Mr. Weiss. Thank you. May it please the court. I want to start my arguments with the board's decision on Roth and Lowe, the combination for obviousness. The board made a factual error stating that Lowe teaches a coding or a coding process for a seed. The intervener agreed that a mistake was made but basically glossed over it. The record shows that one of skill in the art in the field of agglomeration concluded and demonstrated that Lowe in combination with Roth would not get the combined degree of the coded seed. Specifically, Encap presented the Madigan Declaration which stated in several paragraphs that you cannot just agglomerate what's taught in Lowe around the seed. They presented testing. There were photos and evidence. You cannot just do it. There is no evidence that the board doesn't rely on anyone of ordinary skill in the art or anyone to state that the combination will work. Further, Dr. Sundstrom, who is Scott's expert, stated on the record that he did not review Lowe because it did not contain a seed. Further, Scott did not rebut any of Encap's evidence showing that you cannot combine the references. Then there is a general point that the board has made which includes all the prior references and that is the board concluded that on the definition of soil condition material that the soil condition material must beneficially modify the soil to which the soil condition material is applied. That's a given. There is no dispute that's the board's definition. This affects every one of the references. With respect to Lowe, which is a paper mill sludge, the fact that Matthews is flyish, there is no evidence showing that those materials beneficially modify the soil. In fact, there is evidence showing that it does not. But the board agreed that Encap provided evidence showing that not all paper mill sludge would beneficially modify the soil. Not all flyish would beneficially modify the soil. Once the board accepted that evidence, it was Scott's burden to prove that those materials had to have beneficially modified the soil because that's the definition that the board in fact. When we look into the papers themselves, Lowe specifically teaches that their paper mill sludge is chemically inert. That's on AO183, 1,11,14, 1,24, and 2,4. When we look at flyish now, which is the Matthews patent, again, the record shows that not all flyish is the same, as it was found with the experts from both Encap and Scott's experts both agreed to that. When it came down to flyish, when one looked at Matthews, Matthews specifically states that the coating materials including flyish are inert material substances such as flyish. And then it further states that the key to the system of permeability control is that different shaped inert particle ingredients. That's flyish. So basically, the papers specifically state that the substances that the board was claiming would beneficially modify the soil, the papers themselves say they're inert. They have no effect on the soil whatsoever. So therefore, based on the fact that none of the papers show that their materials that the board found beneficially modified the soil, they can't anticipate or make obvious the claims of the 259 PACS. Further, on another note, we believe that the board's constructions of the claims were also incorrect. With regards to combination seed capsule, we believe that the combination seed capsule should have been construed. Scott's originally requested that it be construed in their petition. We, all of the declarants, Baker, Maddox, Madigan, and Pritchak found that the combination seed capsule should have been construed. The board did not construe it. With regards to soil condition material, the 259 patent at column 8 lines 42 through 52 gives a full definition of what a soil condition material is. The board just took a piece of that, the first sentence, and didn't use the whole paragraph to define it. Scott's themselves, in their petition, quoted the full definition of column 8 lines 42 through 52, which NCAT put in, as the definition, and the board found that neither Scott's, neither any of the declarants were correct. Are you conceding that certain claims are anticipated by Schreiber or Matthews? No, I am not, Your Honor. As I just stated before, in order for it to be anticipated, let's just state this, fly ash, for instance, which is Matthews, you have to have a soil condition material that beneficially modifies the soil. Fly ash, as I just stated, is an inert material. It has to be inert, according to the teachings of Matthews, and therefore… Are there teachings of a reference, questions of fact, to which we owe the Patent Office deference? In this regard, Your Honor, they didn't make that determination. The determination they made was, because fly ash is an example in the 259 Patent, because paper mill sludge is an example in the 259 Patent, they didn't take the further step to say, it has to beneficially modify the soil. They just said, because fly ash is in the 259 Patent and fly ash is in Matthews, it's the same. Because paper mill sludge is in the 259 Patent, and because paper mill sludge is in Lowe, it's the same. Based on the Board's own definition, stating that, and in fact they included some examples in their definition, but even they, when they had to go back to those examples, stated that if it's paper mill sludge, fly ash, whatever those materials are, they must beneficially modify the soil. So it's not a question of fact, they didn't observe their own definition. There's no determination whatsoever in their holdings saying that the fly ash, the paper mill sludge, beneficially modifies the soil. And in fact, it can't because it's inert. Don't they say that in A-26, though? I thought they said it in A-26. Specifically. Well, a person born in Erie County, Erie would have understood that a non-toxic fly ash could be used to coat the seed as a soil condition material and that using toxic materials harmful to the seed should be avoided? Correct. We determined that a person born in Erie County, Erie would interpret Matthews as using non-toxic fly ash beneficial to the soil? I agree, Your Honor. They focused on non-toxic versus toxic. They didn't go to... Your Honor, I heard you just say they didn't find, they made no finding on that. With regards to non-toxic, they stated that one of the schools of the art would not have chosen a toxic substance, a toxic fly ash, because fly ash can be toxic. The argument here is that they didn't focus on the fact that fly ash could be inert. An inert material would not beneficially modify the soil. That's where they skipped that section totally. They relied on toxic versus non-toxic, which is a pretty simple argument, rather than addressing the fact that the patent itself, Matthews, as I cited, states that fly ash is inert. What about your argument on the combination seed capsule? I heard you saying that both parties submitted the same very long construction from, I think, the abstract of the patent. Is that right? I thought I heard you just say that. I was thinking, well, doesn't the board have an independent duty to interpret the claims regardless of what the parties assert? Right. No, Your Honor, I didn't say it. The combination seed capsule, both parties stated that it deserved to claim construction. We didn't have the same construction, but both parties submitted a construction, and the board turned around and did not construe the claim whatsoever. What is your basis for reading in such a long definition? Because it says right in the abstract, a combination seed capsule is, and then it goes through exactly what it, you know, it says the event pertains to a combination seed capsule wherein each capsule includes, and then it goes, the combination seed capsules are made by, the combination seed capsules provide, it goes into a whole definition of what the combination seed capsule is. Does that mean we'd have to read, you know, into most patents where it says, uses a word that's in the claim and then says what the beneficial properties are, that we always have to read those into the claim? No, Your Honor, but in this particular case, if one goes to the file history and one looks at the other claims that all relate back to the combination seed capsule, this gives life and meaning to the claim. That's why it's important. Abstract gives life and meaning to the claim? These particular statements give life and meaning to the claim. If these statements were in the summary of the invention, the board probably may have concluded that they were a definition that needed to be construed. They may have looked at that they're in the abstract as not wanting to use them to construe the claim, but they didn't construe the claim at all, actually. My understanding, well, I would say that whether it's in the abstract or the summary, the question is whether there's an express definition. Okay, I agree, Your Honor. Thank you. Should I continue? Sure. Okay, so another minute. Okay, the other important part to understanding this is that every seed coding has a different effect on why it's being used, why elements in the coding are used. For instance, Matthews describes a hard, physically hard coding that's used for planting so that when it's in the planters or it's stored on the shelves, the coding doesn't break. Schreiber discusses a coding where it delays germination. And one of the things that you brought up was, am I giving up on Schreiber for anticipation? The answer is no, because Schreiber uses their coding internally. Their supposed soil condition material is an internal coding. And the whole purpose of it is you plant these seeds in bad weather, and then when the temperatures are right and the moistures are right, that the seed will then germinate. The issue there is a great portion of those seeds will never germinate. Therefore, a great portion of the quote-unquote soil condition material that they're claiming is a soil condition material will never even touch the soil. This is an argument made during the… Where's the evidence of that? It's in Schreiber itself. Schreiber says that a great majority of the seeds will not germinate. And this was brought from the board, and this was an inherency argument. And the board said, and I like to quote them, that even if 50% of the seeds were to germinate, that would be enough for an inherency. And the way I read inherency, and you can look at the oral argument there, was it has to necessarily be present. That's the interpretation of what inherent means. And if only 50% of the seeds will ever have the soil condition material even touch the soil, that can't be inherency. I know I'm into my time. We will save it for you, Mr. Weiss. Thank you. Ms. Rashid. May I please have the court? These are hollow claims based on a hollow specification that lacks the complexity that encapsulates all the declarations that they submitted are just not commensurate. Could you speak up a little bit, please? Yes, Your Honor. I'll help if I can. The point is that these are just hollow claims. There's nothing to these claims. Based on a hollow specification, the specification lacks the complexity that encapsulates what it has. And all the declarations that they cite are just not commensurate in scope with the plain language. Are you raising written description grounds when you talk about hollow specifications? No. Are you talking about obviousness and anticipation? I am only talking about anticipation and obviousness. All I'm saying is that, at best, all that these claims require is a seed coated with soil conditioning materials that are already well-known in the art. And that's not even the inventive concept here. The inventive concept here is this idea that you have the soil conditioning material that's close to the seed, that covers the seed. And because of that, it creates these properties of not only supporting the soil, but when it's planted, it also supports the seed. The board was already overly generous in its claim construction here. But even if we gave ENCAP everything else that they wanted, it doesn't change the analysis here because all of those asserted benefits, potential benefits for which there's no evidence at all in the specification and no data at all, all of that just naturally flows from the fact that this is a combination product. Even if we read with them on the claim construction issue, there's still anticipators and obvious based on that. I want to ask you a question about the motion to amend. What is your response to whether we should remand in view of the PTAB's decision and master image, which further clarified idle free? There's no reason for the court to remand here. All that master image said was that it clarified that when idle free said that you have to show patentable distinction over the prior art of record and the prior art known to the patent owner, what that meant was simply that you had to show patentability over all material art that is in the proceeding. And so here, it doesn't really affect the analysis. This case falls squarely within Microsoft's free proxicon where the references that were cited were part of the proceeding here because not only were they raised in the petition, they were also raised in the opposition. So there's no reason to remand on that basis. And not only that, that was just one ground for denying the motion to amend. The board cited additional grounds, the fact that they didn't provide a claim construction for all the additional limitations that they provided, the fact that there was no technical disclosure supporting any of those asserted limitations. So even if you discount the board's holding on based on Simmons and Evans, there's more than enough reasons for the board to deny their motion to amend. Are there any other further questions? Nothing further. Okay, thank you. All right, Mr. Weiss has some rebuttal time. Your Honor, with her argument that the claims are hollow, the spec is hollow, I totally disagree. This is a marketable product that's been on the market. There are several companies that have licensed this product. If they didn't feel that the patent had any merit to it, they wouldn't need to license us or believe that the patent is valid and move forward with this. Second of all, with regards to the motion to amend, there was an incorrect statement made by Intervena that we did request to extend the page limit and the patent board denied us. It's in the opinion. In fact, they even cited a case which stated we should have asked for more pages. We did and it was denied. It's almost impossible to fulfill all the requirements of claim construction technical disclosure, responding to every piece of prior art in a 15-page limit, including a list of the claims, which according to the case cited by them, if we would have asked for an extension, we probably would have been able to put the claims into an appendix, which wouldn't have been counted against our page limit. Unfortunately, it wasn't granted. So going back to the claims themselves, where she said everything, no argument about anticipation or obviousness other than the fact that she said it should be. Again, Your Honor, according to the board's own decision, they stated specifically that soil conditioning material must beneficially modify the soil other than nitrogen, phosphorus, potassium, or plant nutrients. That's the definition the board came up with that we had to respond to. The Scotts did not put any evidence in stating that any of the prior art fulfilled that definition. This is not just a soil conditioning material, as the interviewee would like to say. The soil conditioning material has a specific definition that the board stated, that the patent states in it that the board found, and that the prior art has to meet in order to anticipate and or make obvious. The prior art did not meet that definition that they stated. Therefore, the prior art should not be found anticipatory or obvious. As evidence, all of our declarants have stated exactly what we're stating. Dr. Caters, Dr. Baker, Mr. Khrushchev, Mr. Magin have all found that the prior art doesn't meet this. Their own declarants have found that in order for these materials, they have to beneficially modify the soil. They agree with the board's definition, yet no one points to any reasoning in the opinion statement that they've met this definition. Therefore, when the board cites to fly ash, paper mill sludge, etc., there is no citations to the patent other than what you said about it being non-toxic, which is not what's claimed. It says it must beneficially modify. It doesn't say toxic, non-toxic. The definition says beneficially modify. If something is inert, it cannot beneficially modify if it's inert. And Lowe is inert. Matthews is inert. They teach that they must be inert. And the Thurgood Schreiber teaches that it's within the inner layer and that it's not inherent. We've already proven that. That's my time, Your Honors. Thank you. Mr. Weiss, we'll take the case on revised. Thank you very much.